KAREN NELSON MOORE, Circuit Judge,
concurring in judgment only.
Because my vote is necessary to enter an order of judgment, I concur with the ultimate judgment to VACATE and REMAND the case to the district court for further proceedings. I join this judgment reluctantly, however, and solely because adherence to my convictions is impossible in light of this panel’s overriding obligation to resolve the case before it. See Screws v. United States, 325 U.S. 91, 134, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (Rutledge, J., concurring in judgment).* Were I not in a position where this panel was faced with a deadlock, I would adhere to my belief that a remand to the district court for further factual development is neither advisable nor required, and that Judge Rogers unnecessarily avoids addressing the merits of Carr’s claim by misconstruing the nature of this court’s recent decision in United States v. See, 574 F.3d 309 (6th Cir.2009), and by refusing to acknowledge the clarity of the record on appeal. Voting my convictions, I would reach the merits of Carr’s claim, which the parties have presented to us for decision, and hold that the district court erred in denying Carr’s motion to suppress. In sum, my concurrence joins Judge Rogers’s outcome only of necessity and adopts none of its reasoning. My reasoning follows.
In requiring a remand in light of this court’s decision in United States v. See, 574 F.3d 309 (6th Cir.2009)—a case that was decided while the instant appeal was pending—I believe that Judge Rogers elevates an opinion that constituted a straight-forward application of established precedent to one that announced a legal change. See, however, did not constitute a change in the law. The standard by which we judge whether a Terry stop occurred remains, as it was before, an objective, totality-of-the-circumstances approach. See See, 574 F.3d at 313 (citing United States v. Foster, 376 F.3d 577, 584 (6th Cir.2004)). Moreover, See did not add additional factors for the district court to consider in determining whether there was a Terry stop. Rogers Op. at 4-5. Rather, as cases decided before See indicate, the relevance of the position of a police vehicle in relation to the defendant’s car in determining whether a Terry stop has occurred is not new. See, e.g., United States v. Jones, 562 F.3d 768, 772-73 (6th Cir.2009) (“[B]y blocking in the [car], the officers [in the unmarked vehicle] had communicated to a reasonable person occupying the [car] that he or she was not free to drive away.” (citing United States v. Baldwin, 114 Fed.Appx. 675, 678 (6th Cir.2004) (unpublished) and Brendlin v. California, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007))). Although this court’s opinion in See could have provided the district court with additional guidance as to whether its findings of fact amounted to a Terry stop, such guidance would have been based solely on the factual similarity between See and the instant case. By concluding that he “must” remand based on these mere factual similarities, however, Judge Rogers endorses a remand for a new evidentiary hearing each time a panel decides a search *948 and seizure case while a factually similar one is on appeal. This is not the law.
Given my belief that See simply applied existing precedent and that the instant case does not otherwise necessitate a remand, I firmly believe that the panel is obligated to address the questions before it: whether there was a Terry stop, and, if so, whether that stop was supported by reasonable suspicion. In concluding that the record on appeal contains insufficient information to answer those questions in light of See, Judge Rogers ignores and obfuscates many of the district court’s conclusions. First, the district court held that there was no Terry stop. In fact, the district court explicitly stated that the type of stop in the instant case was “a citizen encounter with an officer which later became reasonable suspicion to ask the defendant to get of the car, which then ripened into probable cause for an arrest.” Dist. Ct. Hr’g Tr. at 59; see also id. at 58 (“I find that the officers had a right to approach the vehicle at the car wash. Perhaps they needed no reasonable suspicion or probable cause for an officer to approach as a citizen to ask a question is permissible without implication of the Fourth Amendment.”). This “citizen encounter” is synonymous with the “consensual encounter” that Judge Rogers mentions. Rogers Op. at 4.
There are also sufficient findings in the record to allow this panel to determine whether the district court’s conclusion that no Terry stop occurred was legally correct. Cf. Sorrell v. Rinker Materials Corp., 395 F.3d 332, 338 (6th Cir.2005); United Church of Christ v. Gateway Econ. Dev. Corp. of Greater Cleveland, Inc., 383 F.3d 449, 455 (6th Cir.2004) (remanding where the district court had not yet opined on a “highly fact-bound” issue and there was “limited [appellate] briefing”); Ford Motor Co. v. Lloyd Design Corp., 22 Fed.Appx. 464, 468-69 (6th Cir.2001) (unpublished) (noting that “the appropriate procedure is to vacate ... and remand” when the district court “made no findings of fact or conclusions of law” and where the panel could not, “without resorting to speculation[,] determine the basis on which the district court rested its decision” (citing 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 2577)).
A remand is not required to determine whether the police car blocked Carr’s vehicle or to ascertain to what extent the police flashed their lights. Instead, these questions bearing on whether a reasonable person would have felt free to leave are easily answerable with the record on hand. It is clear that the district court credited Officer Carneal’s testimony. Dist. Ct. Hr’g Tr. at 58 (“I believe and credit the testimony of Officer Carneal.”). And the full transcript of the suppression hearing contains non-contradictory statements from both Carneal and Carr as to where the police car was located and whether Carneal activated the lights. See id. at 21, 35. With regard to the position of the vehicles, Carneal testified that the officers “pulled up to the front” of Carr’s vehicle in the car-wash bay and that the “headlights hit” Carr’s vehicle. Id. at 8. When asked whether he blocked Carr’s vehicle, Carneal testified that he “pulled up at an angle” in front of Carr “with probably ... a ten [or twelve] foot gap between” the two and admitted that in order to go around the police vehicle Carr “would have had to do some maneuvering.” Id. at 21. The record also contains statements addressing the use of police lights. See id. at 19, 26, 36. Carneal testified several times that prior to exiting his vehicle, he “flipped” the “blue lights.” Id. at 19, 20. Carr’s testimony did not conflict. Id. at 35. Based on the credited testimony and findings, it is unclear what a remand accomplishes other than allowing the panel to avoid *949 application of our precedents previously applied in See.
Given the ample evidence in the record, I am compelled to conclude that district court erred in determining that the encounter between Carr and the police amounted only to a “citizen encounter.” In fact, the moment that Carneal parked the police vehicle in front of Carr’s vehicle and activated the lights, a Terry stop began. Given the use of police lights, as well as Carneal’s positioning of the police vehicle so that Carr was unable to move from the car-wash bay without “some maneuvering,” a reasonable person in Carr’s position would not have felt free to leave. See See, 574 F.3d at 313 (“Given the fact that Williams blocked See’s car with his marked patrol car, a reasonable person in See’s position would not have felt free to leave.”); ef. id. at 314 n. 4 (noting that an officer “could have properly sought a consensual encounter without blocking [the driver’s] ability to exit, and such a consensual encounter would not have run afoul of Terry ”).
Having determined that there was a Temj stop, our next inquiry is whether that stop was supported by reasonable suspicion. It plainly was not. Despite finding no Terry stop, the district court indicated that even if there were such a stop, the officers would have had reasonable suspicion to approach Carr’s vehicle. Dist. Ct. Hr’g Tr. at 59. In support of this finding, the district court noted that the officers perceived an “apparently unoccupied [vehicle] in a car wash for several minutes ... with nobody washing the car and no activity apparently going on around the car.” Id. The record also indicates that the encounter took place between 9:30 and 10:00 at night, when it was dark, id. at 7, and that the area was known to the police “as a high drug area.” Id. at 56. As this court has noted, the time of day and the fact that it was a high-crime area, standing alone, are insufficient to support a reasonable suspicion that criminal activity is afoot. See, 574 F.3d at 314 (citing Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); United States v. Caruthers, 458 F.3d 459, 467-68 (6th Cir.2006)).
The remaining factor, that there was a vehicle parked in the bay of a car wash and the police did not see any activity when they drove past it twice in a time span of two or three minutes is insufficient to provide reasonable suspicion. The officers were not responding to a particular complaint or acting on a tip, they did not suspect Carr of a specific crime, they had not seen the car sitting in the bay “for an extended period of time,” and Carr did not attempt to flee upon the officers’ approach. See, 574 F.3d at 314. All that the officers knew when they parked in front of Carr’s vehicle and turned on the lights was that there was an occupied vehicle in a car-wash bay and that the person had not exited the car in the two minutes that the officers had observed the vehicle. For all the officers knew, Carr could have exited the vehicle while they were out of sight. Or, Carr could have been searching to find the correct change to operate the machines before getting out of his vehicle. In fact, Officer Carneal testified he had no reason to believe that anything “improper,” “illegal,” or “wrong” was occurring when the officers decided to approach Carr. Dist. Ct. Hr’g Tr. at 17. Because the encounter between Carr and the police amounted to an unlawful Terry stop, the evidence that resulted from the search of Carr’s vehicle must be suppressed. See See, 574 F.3d at 314 (citing Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).
In conclusion, I believe that Judge Rogers unnecessarily avoids addressing the *950 merits of Carr’s claim. Were I voting my convictions and not by necessity, I would reach the merits and hold that the district court erred in denying Carr’s motion to suppress. Unfortunately, however, if I were to vote my beliefs, this case would remain unresolved. Because “[sjtalemate should not prevail for any reason, however compelling, in a criminal cause or, if avoidable, in any other,” Screws, 325 U.S. at 134, 65 S.Ct. 1031 (Rutledge, J., concurring in judgment), I cast a concurring vote with Judge Rogers to VACATE and REMAND. See Hamdi v. Rumsfeld, 542 U.S. 507, 553, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004) (Souter, J., concurring in judgment) (“ordering remand on terms closest to those” that the Justice would prefer in order to give practical effect to the conclusions of the plurality). My view that the police conducted an unreasonable Terry stop and that the evidence should be suppressed is more in line with Judge Rogers’s view that it is unclear whether a Terry stop occurred—reasoning that preserves the remedy of suppression—than Judge Thapar’s outright affirmance of the district court’s denial of Carr’s motion to suppress on the grounds that the exclusionary rule does not apply. See Connecticut v. Johnson, 460 U.S. 73, 89-90, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983) (Stevens, J., concurring in judgment).

 As Justice Rutledge stated in Screws, “My convictions are as I have stated them. Were it possible for me to adhere to them in my vote, and for the Court at the same time to dispose of the cause, I would act accordingly. The Court, however, is divided in opinion. If each member accords his vote to his belief, the case cannot have disposition. Stalemate should not prevail for any reason, however compelling, in a criminal cause or, if avoidable, in any other.... Accordingly, in order that disposition may be made of this case, my vote has been cast [contrary to my views].” 325 U.S. at 134, 65 S.Ct. 1031.